

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRIS LANGER<br><br>                Plaintiffs,<br>vs.<br><br>BOTACH MANAGEMENT LLC, DAVID MEYER LLC<br><br>                Defendant. | Case No.: 2:19-cv-5200-SVW-AFM<br><br>**FINDINGS OF FACT AND CONCLUSIONS OF LAW** |

## I. Introduction

On January 7, 2020, the Court held a bench trial in this action to determine whether Defendant Botach Management LLC ("Defendant") was liable under Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12182 *et seq.* (the "ADA" or "Title III"), and California's Unruh Civil Rights Act, Cal. Civ. Code § 51 *et seq.*[1] In advance of trial, Plaintiff Chris Langer ("Plaintiff") submitted declarations containing his witnesses' direct testimony, as required by the Court's Standing Order for non-jury trials, while Defendant submitted a declaration of Ben

---

[1] Plaintiff's pretrial brief included an allegation that the front ramp to the Showroom was steeper than permitted by the ADA. *See* Dkt. 35 at 2, 8. This issue was not addressed in detail by Plaintiff during the trial, although Ben Botach testified for the Defendant that the front curb to the Showroom is part of the sidewalk and owned and maintained by the City of Los Angeles. Plaintiff did not address this issue in his closing statement or case-in-chief, so the Court will assume Plaintiff has waived that claim and not address it in this order.

1

Botach, the managing partner of Botach Management LLC. The parties presented their witnesses at trial and submitted their declarations as direct testimony, after which cross-examination and re-direct questioning by the parties was permitted. The Court also engaged in its own questioning of certain witnesses. Having carefully reviewed and considered the evidence presented at trial, the Court issues the following findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52(a).

## II. Findings of Fact

For all findings of fact set forth below, in making any credibility determinations regarding witness testimony, the Court has considered, among other things, the manner in which the witnesses testified, their interest in the outcome of the case, and the reasonableness of their testimony in light of all of the evidence. The Court has also considered the relevant factors in Section 1.14 of the Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit (2017 Edition), located at http://www3.ce9.uscourts.gov/jury-instructions/sites/default/files/WPD/Civil_Instructions_2019_12.pdf

### A. The David Meyer Showroom

At all relevant times, the David Meyer Showroom ("the Showroom") was a business located at 6110 W. Pico Blvd, Los Angeles CA.[2] Botach Management LLC ("Defendant") is the owner of the property. At the time, the proprietor of the Showroom leased one-third of the building from Defendant. The David Meyer Showroom exclusively sells household fixtures such as faucets, showerheads, toilets, and sinks. At the time of Plaintiff's visit in May 2019, it had a sign indicating "Parking in Rear" on its front door. Customers of the Showroom are not required to make appointments in order to shop at the showroom. At some time between Plaintiff's visit in May 2019 and the trial date, the "Parking in Rear" sign was removed from the front door to the Showroom, based on pictures presented as exhibits at trial.

The building manager, Ben Botach, testified that the rear parking lot contains three spaces that are specifically for the private use of the three tenants of the building, and that the Defendant had never knowingly offered parking to the public in the rear parking lot. He also

testified that the only parking available for customers of the Showroom was public, metered parking on the street in front of the Showroom. The Court found Botach's testimony to be credible throughout and concluded that the pictures presented at trial supported his assertion that the rear parking lot included only three specified parking spaces, with additional space left clear for storage and access to a rear entrance to the building. *See* Plaintiff's Exhibits (no number given).

### B. The Plaintiff

Plaintiff Chris Langer is a disabled resident of San Diego, California. Plaintiff uses a motorized wheelchair and drives a handicap-accessible van. Dkt. 36 at 2. Plaintiff's direct testimony declaration stated that (1) he travels to Los Angeles frequently to eat, shop, and attend auctions and other events, and (2) he will return and patronize the store once the barriers are removed. *Id.* at 3.

### C. The Alleged Violation

Plaintiff testified first, stating that on May 24, 2019 he was in Los Angeles to attend a mediation. He said that he saw the David Meyer Showroom's entrance while driving in his van, and after seeing a sign that it offered "Parking in Rear," he traveled to the rear lot. Upon seeing that no handicap-accessible parking was available in the rear parking lot, he then took several photos from inside his van, and returned to the front of the store to take another picture of the Showroom's front door. Plaintiff's pictures of the parking lot and accompanying testimony clearly establish that none of the requirements for providing handicap-accessible parking were met by the parking spots in Defendant's rear parking lot. Plaintiff then traveled to a Sherwin Williams paint store, and two marijuana shops, noting during his testimony that neither of the marijuana shops offered parking.

Plaintiff's home is approximately a four-hour drive from the Showroom, in the Mission Bay neighborhood of San Diego. Plaintiff lives in a three-bedroom, handicap-accessible house. Plaintiff testified that he saw through the store's front door and window an especially narrow toilet that would be suited to his future plans to remodel his bathroom. Plaintiff testified that he

---

[2] Additional defendant David Meyer LLC has defaulted and was not part of this bench trial. *See* Dkt. 15.

3

made the decision to visit the Showroom and purchase a toilet on a whim. He stated that he planned to hire a contractor he knew to install the toilet, and that he had previously removed a wall between his bathroom and bedroom. Plaintiff testified that when he purchases large items, he leaves them in his van until a friend can transport them into his house, sometimes for several days. Plaintiff had never visited the Showroom prior to his May 2019 visit. As of the trial date, Plaintiff had not visited the Showroom again.

### D. The Plaintiff's Credibility

In its role as the fact-finder in a bench trial, the Court did not find Plaintiff's testimony credible. The Court was not convinced that Plaintiff had any actual intent to purchase or consider purchasing a toilet (or any other household fixture) at the Showroom in West Los Angeles, and then drive four hours south to San Diego with the toilet in his van, only to later hire a contractor to include it in a planned remodeling project at his home in the Mission Bay neighborhood of San Diego. The Court finds that the Plaintiff's stated intent to purchase an individual toilet *before* consulting a contractor regarding the specific project plan in question to be untruthful, and infers that Plaintiff likely prepared this justification after reviewing photos provided by his investigators after his visit. Plaintiff also indicated that he had previously removed a wall between his bathroom and bedroom, which also causes the Court to doubt his alleged need for a particularly narrow toilet given the expansion created by wall removal.

The Court also did not find credible, given the picture exhibits presented at trial, that Plaintiff could have seen any of the toilets available at the Showroom, much less have particularly identified a narrow model especially suited to his bathroom renovation project. For example, the only toilets shown in the photo exhibits provided to the Court were at the very back of the store, approximately forty feet[3] from the glass door at the front of the Showroom. *See* Trial Exhibit 6-A.[4] Pictures taken by the Plaintiff himself establish that his visit occurred during the

---

[3] The Court estimates this figure based on the length and number of wooden floorboards in the submitted photos, which are in close proximity to kitchen faucets of standard size.

[4] The Court notes that the only pictures submitted in the exhibits that displayed toilets of any kind were taken by one of Plaintiff's investigators on Sept. 11, 2019, several months after Plaintiff's alleged visit. *See* Exhibit 6-A. In the absence of any other submitted evidence on this point, the Court finds that the toilets in these photos were the narrow toilets Plaintiff claims he saw through the glass front door.

4

middle of the day. *See* Trial Exhibit 3-A, 3-B, 3-C. The glass front door to the store is particularly difficult to see into during the daytime, even from the sidewalk directly in front of the entrance. *See* Trial Exhibit 5-H, 5-I. Plaintiff testified that he did not leave his van at any point during the encounter. Plaintiff's assertion that he was able to identify a specific, narrow toilet approximately forty feet into the store's interior from the driver's seat of his van, across the sidewalk, during the daytime, is not remotely credible.

Because the Plaintiff did not have any intent to enter the store when he drove into the parking lot, the Court concludes that he was not deterred by the lack of a handicap-accessible parking spot from patronizing or accessing the Showroom. The Court finds as a factual matter that (1) Plaintiff was not deterred from accessing the Showroom at the time that he entered the rear parking lot of the Showroom and saw no handicap-accessible parking, and (2) that he is not currently deterred from visiting the Showroom, because there is no likelihood whatsoever he would return to purchase household fixtures of any kind from a West Los Angeles fixture showroom for his home in San Diego.

### E. The Defendant's Rear Parking Lot

Based on the evidence submitted at trial, the Court determined that at the time Plaintiff entered the rear parking lot on May 24, 2019, the Showroom's sign offering "Parking in Rear", in combination with an open rear parking lot lacking any "No Parking" sign or express restrictions limiting those parking spaces to tenants constituted parking offered to the public. The Court concludes that regardless of Defendant's knowledge, at the time Plaintiff visited the parking lot, the tenant who leased the Showroom did offer parking to the public, in connection with the Showroom, which was a sales establishment open to the public. The Court also concludes that between May 24, 2019 and the trial date, the sign on the Showroom's front door was removed, and the Showroom no longer offered any type of parking to the public.

## III. Conclusions of Law

### A. Legal Standard

To bring suit in federal court, a party must meet the standing requirements of Article III of the Constitution. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). Standing "limits the

category of litigants empowered to maintain a lawsuit in federal court." *Id.* To achieve standing, "the plaintiff must have (1) suffered an injury-in-fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." Id. "The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements." *Id.*

In establishing an injury, the Supreme Court held that an injury-in-fact needs to be "concrete and particularized" and "actual or imminent." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). The Ninth Circuit held that for ADA claims a plaintiff's injury is concrete and particularized if he is currently deterred from visiting the establishment. *Doran v. 7-Eleven, Inc.*, 524 F.3d 1034, 1040 (9th Cir. 2008). A plaintiff fulfills the actual or imminent requirement when he is threatened with harm in the future because of an existing or imminently threatened non-compliance. *Id.* A plaintiff has also suffered an "injury in fact" traceable to the defendant's conduct once he has "encountered or become aware of alleged ADA violations that <u>deter</u> his patronage of . . . a place of public accommodation." *Chapman*, 631 F.3d at 947 (quoting *Doran*, 524 F.3d at 1042 n. 5.) (emphasis added).

B.     **Analysis**

   1.     ***Plaintiff was not previously deterred by the lack of accessible parking in the Showroom's rear parking lot.***

The evidence presented at trial established that Plaintiff was not deterred from visiting the Showroom at the time he entered the rear parking lot, because he never had any intent to exit his van and patronize the Showroom. Therefore, regardless of whether the Showroom had an obligation to provide accessible parking and failed to provide it, Plaintiff's lack of intent to patronize the Showroom means the Plaintiff did not suffer an injury in fact. Plaintiff's story that he spontaneously decided purchase a narrow toilet in West Los Angeles, in preparation for installation at some future date, by a contractor he had not yet contacted or hired, is entirely implausible. Plaintiff had never patronized the Showroom before, lived more than 120 miles away from the Showroom, and presented no concrete evidence to suggest that his visit was part of a plan to purchase a toilet, or any other type of household fixture offered by the Showroom.

6

Unlike plaintiffs in other ADA cases, the specialized goods sold by the Showroom, the very substantial distance between Plaintiff's home and the Showroom, and the lack of additional evidence supporting Plaintiff's claim that he intended to patronize the Showroom all lead this Court to conclude as a matter of law that he suffered no injury in fact, because he was never deterred from accessing a place of public accommodation in the first place. *Compare Doran v. 7-Eleven, Inc.*, 524 F.3d 1034, 1040 (9th Cir. 2008) (finding standing when plaintiff alleged that he had visited the 7-Eleven ten to twenty times before, and that is was located near his favorite fast food restaurant in Anaheim, which he plans to visit on his annual trips to Disneyland); *Pickern v. Holiday Quality Foods Inc.*, 293 F.3d 1133, 1138 (9th Cir. 2002) (finding that the plaintiff's allegations that he preferred to shop at a particular grocery store, if accessible, sufficient to establish injury for standing purposes) *with Langer v. H&R LLC*, 2018 WL 6039823, at *2 (C.D. Cal. Aug. 13, 2018) (concluding that the same Plaintiff in this case, as a San Diego resident, did not have standing with regard to ADA parking violations in a Los Angeles strip mall between 78 and 198 miles from his home); *Kristoffersen v. RVS110, LLC*, 2019 WL 1877183, at *4 (S.D. Cal. Apr. 26, 2019) (denying summary judgment on the basis of inadequate evidence of either intent to return or actual deterrence with regard to a motel 250 miles from the plaintiff's home).

*Civil Rights Educ. & Enf't Ctr. v. Hosp. Properties Tr.*, does not alter this conclusion, because the Plaintiff did not present any evidence at trial to establish that he was acting as a "tester" for ADA purposes, and that decision solely addressed the *motivations* of the plaintiffs, which the Ninth Circuit determined could not deprive a plaintiff of standing, when they otherwise alleged that they encountered a barrier that deterred them from accessing a hotel. 867 F.3d 1093, 1099, 1102 (9th Cir. 2017); *see also Twede v. Univ. of Washington*, 309 F. Supp. 3d 886, 898 (W.D. Wash. 2018). Here, the Court determines that Plaintiff had no intent to patronize the Showroom, and thus was not deterred by the lack of accessible parking. Accordingly, Plaintiff has no Article III standing for this claim on based on his previous visit.

2. ***Plaintiff is not currently deterred from returning to the Showroom because of any ADA violations.***

First, the evidence and testimony presented at trial established that while the Showroom may have had parking offered to the public via the "Parking in Rear" sign at the time of Plaintiff's visit, that parking is no longer offered to the public. Because the Showroom no longer offers public parking, and a lack of adequately accessible parking is the only ADA violation that Plaintiff established factually at trial, Plaintiff cannot have Article III standing on the basis of the continuing deterrent effect of a barrier that no longer exists. *See Hubbard v. 7-Eleven, Inc.*, 433 F. Supp. 2d 1134, 1145 (S.D. Cal. 2006) (violations moot once it no longer exists for purposes of ADA); *Indep. Living Res. v. Oregon Arena Corp.*, 982 F. Supp. 698, 771 (D. Or. 1997).

Additionally, Plaintiff is not currently deterred from visiting the Showroom because (as discussed previously) he did not credibly establish at trial that he had any intent to return to the Showroom. Beyond the clear credibility issues regarding his testimony discussed above, the fact that he lives more than 120 miles away from the Showroom in San Diego and testified at trial only vaguely regarding his intent to return, the Court alternatively concludes that he is not currently deterred from visiting the Showroom on the basis of those factual findings.

### IV.   Conclusion

Based on the Court's findings of fact and conclusions of law set forth above, the Court holds that because Plaintiff has not suffered an injury in fact, he lacks Article III standing to bring these claims, and thus cannot prevail under either the ADA or California Unruh Act. Judgment for the Defendant.

IT IS SO ORDERED.

Date: 2/21/20

_____
HON. STEPHEN V. WILSON
UNITED STATES DISTRICT JUDGE